OPINION *Page 2 
{¶ 1} Appellant, GEM Development, Inc., appeals the judgment of the Richland Court of Common Pleas granting summary judgment to appellee, Pepsi-Cola Bottling Company of Mansfield, Ohio, in litigation arising from a real estate purchase agreement.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In order to fully address the assignments of errors, an overview of the underlying facts is necessary.
 {¶ 3} Appellant owns 23 acres of property in Ontario, Ohio. Appellee owns a manufacturing plant in Ontario adjacent to appellant's property. On August 28, 2003 the parties entered in a written real estate agreement ("Agreement") to sell 6 of the 23 acres ("Property") to appellee for business expansion. The purchase price for the property was $290,000.00.
 {¶ 4} The parties were originally scheduled to close on or before December 30, 2003, and the closing was contingent upon certain conditions precedent expressed in the Agreement in "Addendum B." Addendum B was signed by the parties on or about September 6, 2003.
 {¶ 5} Item number one (1) of Addendum B provides that the first condition precedent is "Buyer obtaining suitable zoning for its intended use." The Property was zoned R-2 Medium Density Residential District ("R-2"). For Appellee to expand its current adjacent facilities, appellee sought to rezone the property from R-2 to an Industrial Park District ("IP").
 {¶ 6} The parties did not close as initially scheduled, and the parties agreed to execute four amendments (the "Amendments") to the Agreement, which ultimately *Page 3 
extended the closing date to February 1, 2005, a period of over one year and two months.
 {¶ 7} Appellant agreed to the condition precedent language in the Agreement each time there was an amendment. Each of the amendments expressly states: "The period of closing (and for satisfying the Purchaser's contingencies) is hereby extended to [date]."
 {¶ 8} Over a period of several months, appellee sought rezoning of the Property from R-2 to IP. Appellee's representatives attended many meetings with city representatives including the zoning inspector and the mayor of Ontario, city residents, the Planning Commission and City Council.
 {¶ 9} Under the City's Charter, any rezoning request must be approved by the Ontario City Council. On October 22, 2004, appellee submitted its Application for Amendment to the Zoning Ordinance to the City Planning Commission in order to obtain the Commission's recommendation and approval of City Council for the rezoning.
 {¶ 10} Appellee hired architects who prepared site plans at appellee's expense. The architects also attended meetings for purposes of satisfying the contingencies, including rezoning, in the Agreement.
 {¶ 11} Appellee hired professional consultants to perform engineering and environmental studies including an environmental site assessment, a preliminary jurisdictional waters delineation, commonly referred to as a "wetland" delineation, and boundary and topographic surveys, at appellee's expense, for purposes of satisfying the contingencies, including rezoning, in the Agreement. *Page 4 
 {¶ 12} On November 10, 2004, appellee's representatives appeared before Planning Commission to request rezoning. Planning Commission recommended approval of the rezoning to City Council and placed appellee request on the agenda for the January 6, 2005, City Council meeting for public hearing.
 {¶ 13} The January 6, 2005 City Council meeting was cancelled due to an ice storm.
 {¶ 14} The Agreement expired by its own terms on February 1, 2005 without the parties executing any additional amendments. The property remains zoned R-2.
 {¶ 15} On March 3, 2005, appellee attended the City Council Meeting and public hearing regarding the rezoning. There was public opposition to the rezoning. City Council was next scheduled to vote on the issue on April 7, 2005.
 {¶ 16} On April 7, 2005, appellee called the City and requested that City Council table the vote regarding rezoning. City Council unanimously tabled the vote on rezoning.
 {¶ 17} On July 11, 2005, appellee sent the City a letter stating it was closing its manufacturing operations in Mansfield and terminating the employment of 35 people.
 {¶ 18} On September 22, 2005, appellant filed a complaint alleging breach of contract against appellee. Appellee filed a motion for summary judgment, which was granted by the trial court on July 5, 2006. This appeal ensued and appellant raises a single assignment of error:
 ASSIGNMENT OF ERROR {¶ 19} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF THE APPELLEE. *Page 5 
 I. {¶ 20} Appellant argues there exists genuine issues of material fact which precludes summary judgment.
 {¶ 21} Appellant argues that there is a dispute of fact as to whether appellee acted in good faith and due diligence in pursuing the zoning change from R-2 to IP. Appellant also argues there is a dispute of fact as to whether the Agreement expired due to the parties' failure to close in February, 2005 without further extension of the closing date for the transaction.
 {¶ 22} Our standard of review is de novo, and as an appellate court, we must stand in the shoes of the trial court and review summary judgment on the same standard and evidence as the trial court.Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
 {¶ 23} Civil Rule 56 (C) states in part:
 {¶ 24} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 25} Summary judgment is a procedural device to terminate litigation so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356. *Page 6 
 {¶ 26} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
 {¶ 27} Appellant first posits there exists genuine material issue of fact as to whether appellee acted in good faith and with due diligence in pursing the zoning change from R-2 to IP.
 {¶ 28} "A condition precedent is a condition which must be performed before the obligations in the contract become effective." Troha v.Troha (1995), 105 Ohio App.3d 327, 334, 663 N.E.2d 1319, 1324, citingMumaw v. W S. Life Ins. Co. (1917), 97 Ohio St. 1, 119 N.E. 132.
 {¶ 29} "Essentially, a condition precedent requires that an act must take place before a duty of performance of a promise arises. If the condition is not fulfilled, the parties are excused from performing.'"Troha, citing Fortune v. Fortune (May 3, 1991), Greene App. No. 90-CA-96, unreported.
 {¶ 30} The language of the Agreement at Addendum B reflects the parties' intention that appellee's obligation to close on the Agreement was contingent upon suitable rezoning of the Property from R-2 to IP, which was a condition precedent to *Page 7 
the contract. Troha at 334. See also, State v. City of Kettering (1962),118 Ohio App. 143, 149, 193 N.E.2d 547; W. B. Gibson Co. v. WarrenMetropolitan H. Authority (1940), 65 Ohio App. 84, 29 N.E.2d 236.
 {¶ 31} "A failure to satisfy a condition precedent prevents the creation of the contract subject to that condition precedent." Beck v.Sluss Realty Co. (Ohio App. 5 Dist. 1987), unreported, footnote no. 2 at 3, citing 18 O. Jur.3d, Contracts, § 187.
 {¶ 32} In this case, the Agreement was not binding on the parties because rezoning from R-2 to IP, a condition precedent, was undisputedly not satisfied; therefore appellee was under no legal obligation to purchase the Property under the Agreement until the rezoning application was approved by City Council.
 {¶ 33} Appellee was "required to act in good faith and use best efforts for a reasonable time" to obtain rezoning. Beck, supra. Appellee showed evidence of its due diligence efforts, including hiring engineering and architectural consultants at Defendant's expense, meeting with the Mayor and other City officials and appearing before the Planning Commission and City Council, all of which was supported by affidavits and copies of certified documents recording Defendant's appearance at various meeting. See, Affidavit of Ronald Shinn and Exhibits A-N attached to appellant's Motion for Summary Judgment.
 {¶ 34} Appellant failed to produce any evidence to the contrary.
 {¶ 35} Appellant also argues there is a dispute of fact as to whether the Agreement expired. We disagree.
 {¶ 36} The Property was neither rezoned prior to February 1, 2005, nor did the parties agree to again extend the closing beyond that date, the contract is "cancelled *Page 8 
and of no effect" and appellee was released from all liability under the contract. Troha, supra, W. B. Gibson, supra.
 {¶ 37} Assuming arguendo that appellee obtained rezoning, the contract still expired on February 1, 2005 and there is no dispute that an extension was not executed.
 {¶ 38} Appellant's sole assignment of error is overruled.
 {¶ 39} The judgment of the Richland County Court of Common Pleas is affirmed.
J. Gwin, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY *Page 9 
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1