TROHA, n.k.a. HOLT, Appellee,

v.

TROHA, Appellant.

[Cite as *Troha v. Troha* (1995), 105 Ohio App.3d 327.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 95–CA–5.

Decided June 28, 1995.

*Paul W. Barrett,* for appellee.

*James R. Kirkland,* for appellant.

BROGAN, Judge.

Appellant, William A. Troha, appeals from the judgment of the Greene County Court of Common Pleas, Domestic Relations Division, requiring him to pay for his son's college education in accordance with the terms of a separation agreement.

Troha and appellee, Hanna Holt (formerly Troha), were married on September 23, 1966. Three children were born of the marriage. The parties' marriage was terminated by divorce in 1992. As part of the final decree of divorce, the trial court approved and incorporated into its judgment a separation agreement that the parties had negotiated and signed.

The separation agreement contains extensive provisions concerning payment of the college expenses of two of the parties' children, Kristofer and Shaye. Generally, the agreement provides that the children's college education will be

paid from the following sources in descending order: (1) savings bonds of approximately $3,850 owned by Troha, (2) certificates of deposit ("CDs") in the names of Kristofer and Shaye, respectively, and (3) proceeds from the sale of three vacation properties owned by the parties. The balance, if any, was to be paid by Troha. The agreement specifically states that the separate CD accounts in Kristofer's and Shaye's names shall be maintained in each child's name with one parent listed as custodian. The agreement further states, "Before any movement of funds is made from these accounts, except for direct college expenses, a written agreement must be entered into by both the Husband and the Wife."

On March 14, 1994, Troha filed a contempt motion alleging that Holt had failed to comply with various provisions of the separation agreement, including failing to cooperate in the sale of the vacation properties and failing to turn over the CDs in Shaye's name. Troha further alleged that Holt had transferred Shaye's CDs without his written permission. Thereafter, Holt filed a cross-motion for an order finding Troha in contempt, alleging that Troha had also failed to comply with various provisions of the separation agreement.

A hearing was held before a referee on the contempt motions on June 1, 1994. At the time of the hearing, the parties' son Kristofer was enrolled as a student at Clemson University and the parties' minor daughter Shaye was still attending high school. At the hearing, Holt testified that Kristofer's CDs had been cashed and given to him to pay for college expenses. She further testified that Shaye's CDs had been reinvested into new accounts, where the funds would remain until needed to pay for Shaye's college education. Troha testified that he wanted Holt to transfer Shaye's accounts to him so that the funds could be used to pay for Kristofer's college expenses. He argued that the separation agreement requires that the CDs of *both* children must first be used for Kristofer's college education before his duty to pay for the balance of the education costs accrues. Neither party disputed that the CDs held in Kristofer's name had already been cashed and used for his college expenses.

The referee filed his report and recommendations on October 11, 1994, finding, *inter alia*, that the trial court had no jurisdiction over the CDs in Kristofer's and Shaye's names and, therefore, could not order that the accounts in Shaye's name be transferred to Troha. The referee concluded that because the children's accounts were not subject to the jurisdiction of the court, the provision requiring that the CDs be used for college prior to the accrual of Troha's obligation to pay the balance should essentially be stricken from the separation agreement. Accordingly, the referee recommended that Troha be required to pay for the balance of the cost of Kristofer's college education after the use of funds from the savings bonds, funds from the CD accounts in the parents' names alone, if any,

and the proceeds from the sale of the vacation properties. Troha filed timely objections to the referee's report. On December 22, 1994, the trial court overruled Troha's objections and adopted the referee's report and recommendations in full.

Troha raises the following assignments of error on appeal:

"I. The trial court erred as a matter of law when it interpreted the separation agreement.

"II. The trial court erred as a matter of law when it extended appellant's obligation under the separation agreement beyond the terms of that agreement."

As both assignments of error concern the trial court's interpretation and resolution of the college education provision of the separation agreement, they will be discussed together.

▮▮▮▮ Initially, we note that a court is generally without jurisdiction to order a parent to support a child once that child reaches the age of majority. *Maphet v. Heiselman* (1984), 13 Ohio App.3d 278, 279, 13 OBR 343, 343–344, 469 N.E.2d 92, 93–94; *Miller v. Miller* (1951), 154 Ohio St. 530, 43 O.O. 496, 97 N.E.2d 213. Nonetheless, separation agreements providing for support of children beyond the age of majority, including provisions to pay for the college education of the children, are valid and enforceable if they have been incorporated into a divorce decree. *Nokes v. Nokes* (1976), 47 Ohio St.2d 1, 1 O.O.3d 1, 351 N.E.2d 174; *Grant v. Grant* (1977), 60 Ohio App.2d 277, 14 O.O.3d 249, 396 N.E.2d 1037. Thus, although Kristofer has already reached the age of majority, the college education provision here was valid and enforceable.

▮▮▮▮ In enforcing a separation agreement that has been incorporated into a divorce decree, the trial court has the authority to hear the matter, clarify any confusion over the interpretation to be given a particular clause, and resolve the dispute. *In re Dissolution of Marriage of Seders* (1987), 42 Ohio App.3d 155, 156–157, 536 N.E.2d 1190, 1192–1193. A separation agreement is a contract and, as such, is subject to the same rules of construction that apply to other contracts. *Forstner v. Forstner* (1990), 68 Ohio App.3d 367, 372, 588 N.E.2d 285, 288; *Uram v. Uram* (1989), 65 Ohio App.3d 96, 99, 582 N.E.2d 1060, 1061–1062. The contract must be interpreted in accordance with the parties' intention. *Forstner, supra.*

In the present case, the trial court found that the following provision in the separation agreement concerning use of the CDs in the children's names was ambiguous: "The Certificates of Deposit for son, Kristofer, and daughter, Shaye, will be used for their college education." The court found that ambiguity existed as to whether *only* the CDs in Kristofer's name must be used for his education or

whether *all* of the CDs, including the CDs in Shaye's name, must be used for Kristofer's education prior to his father's obligation to pay the balance.[1] However, the trial court did not reach the issue of interpreting the provision. Rather, the court simply stated that it had no jurisdiction over the accounts of the children and, therefore, could not order that the accounts be transferred to Troha. The court then decided that the provision requiring that the children's CDs be used for their college education should essentially be stricken from the contract. Troha contends that the trial court should have ordered that the CDs in Shaye's name be transferred to him to help pay for Kristofer's college education and raises several arguments in support of that proposition.

■ Troha first argues that the trial court erred in finding that it did not have jurisdiction to order that the CD accounts in Shaye's name be turned over to him. Troha contends that the trial court does have jurisdiction over these accounts because the validity of the separation agreement was established when the trial court approved the agreement and incorporated it into the divorce decree.

■ We disagree. It is axiomatic that a court is without authority to enforce orders concerning property that is not within its jurisdiction. The parties in the present case do not argue that the CD accounts in Shaye's name are not her separate property but, rather, appear to agree that the funds in those accounts belong to her. In fact, the record reveals that a significant portion of the funds in those accounts was awarded directly to Shaye as settlement of a dog-bite case that occurred when she was a young child. Although the trial court may have approved and adopted the separation agreement, those acts alone do not confer jurisdiction or authority on the court to make orders concerning the separate property of the parties' children. Accordingly, we find no error in the trial court's determination that it was without jurisdiction to order that Shaye's accounts be transferred to Troha.

■ Troha next argues that the trial court erred in striking the provision concerning use of the children's CDs from the separation agreement. He argues that his agreement to pay for the balance of the cost of the children's college education was made with the specific understanding that the CD accounts of the children, as well as the proceeds from the sale of the vacation properties, must

---

1. The record reveals that the CDs held in Kristofer's name have already been cashed and used to pay for his college expenses. Thus, only the CD accounts in Shaye's name are the subject of the current appeal. Further, the trial court ordered that the vacation homes be sold promptly and that the proceeds from the sale be used for college expenses in accordance with the agreement. Both parties agree that Troha's obligation to pay the balance of the college expenses does not accrue until after the proceeds from the sales have been expended. Any expenses paid by Troha for Kristofer's college expenses prior to the sale of the vacation homes are to be reimbursed to him from the proceeds of the sales.

first be used before he has a duty to pay the balance. He contends that the trial court erred in simply striking this provision from the separation agreement because the parties clearly intended that these funds be used first. Troha claims that a more equitable solution should be reached.

We find this argument persuasive. It is a fundamental principle in contract construction that contracts should be interpreted "so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. It is indisputable, as noted in the referee's report, that the parties intended to provide adequate funds for the college educations of their children. Further, the separation agreement clearly · reveals that the parties intended that Troha's duty to pay for the balance of the children's college education would not accrue until the funds from the children's CDs had been used for their college expenses. To simply strike this provision from the contract plainly imposes an additional financial duty on Troha that was not within the original contemplation of the parties at the time they entered into the contract.

Although we agree with the trial court's determination that it is without jurisdiction or authority to order that the CDs in the children's names be used for their college educations, we do not agree that the provision concerning the CDs should be completely stricken from the contract. Rather, it is possible to effectuate the parties' intent by construing the provision as a condition precedent to Troha's obligation to pay the balance of the college expenses.

A condition precedent is a condition which must be performed before the obligations in the contract become effective. *Mumaw v. W. & S. Life Ins. Co.* (1917), 97 Ohio St. 1, 119 N.E. 132. Essentially, a condition precedent requires "that an act must take place before a duty of performance of a promise arises. If the condition is not fulfilled, the parties are excused from performing." *Fortune v. Fortune* (May 3, 1991), Greene App. No. 90–CA–96, unreported, 1991 WL 70721. Whether a provision in a contract is a condition precedent is a question of the parties' intent. Intent is ascertained by considering not only the language of a particular provision, but also the language of the entire agreement and its subject matter. *Mumaw, supra.*

In the present case, the following language of the parties' written agreement clearly reflects their intention that Troha's obligation to pay the balance of the college costs is contingent upon the depletion of the other named funds, including the children's CDs, for college expenses:

"The Husband agrees that after the above expenditure of Three Thousand Eight Hundred Fifty Dollars ($3,850) from the bonds for the college education of

their son, Kristofer, as set forth in Article XV, and after payment for Kristofer and Shaye's college education from the accounts as outlined in Article XIV, and after payment of the proceeds from the vacation properties for the parties children's college education as set forth in Article XI, that he will be responsible for the balance of the payment."

Testimony in the record further reveals that both parties intended that Troha would not be responsible for paying the balance of the costs of the college education until the children had used their CD funds for that purpose. This intention is clearly in accordance with the well-established principle in Ohio that parents generally have no duty to provide support, including payment for college expenses, for emancipated children. See, generally, *Maphet, supra.*

Accordingly, we conclude that the trial court erred in striking the provision of the separation agreement concerning use of the CDs in the children's names for their college education. The court should have construed the provision as a condition precedent. Although the trial court does not have the authority to order that the children's CDs be used for their college expenses, Troha's duty to pay for the balance of the college costs will not arise until the CDs have been so used.

Finally, we must determine whether the condition precedent requires that the CDs of both children must first be used prior to Troha's obligation to pay or whether each child's CDs must be used for his or her own college education. Troha argues that the following plain language of the settlement agreement is unambiguous: "The Certificates of Deposit for son, Kristofer, and daughter, Shaye, will be used for their college education." He contends that inclusion of the words "and" and "their" in the provision clearly indicates that the CDs of *both* of the children must first be used for Kristofer's education before his duty to pay the balance arises.

We agree with the trial court that the language in the provision is ambiguous. The provision could be interpreted as Troha suggests or it could be interpreted to mean that each child's CDs must be used for his or her own college expenses. When a clause in a separation agreement is ambiguous, a court can resolve the dispute by considering not only the intent of the parties, but also the equities involved. *In re Dissolution of Marriage of Seders, supra,* 42 Ohio App.3d 155, 536 N.E.2d 1190.

It is undisputable that the parties intended to provide for their children's college educations and to ensure that both children receive a college education. In accordance with this clear intent, the logical and equitable interpretation of the provision is that each child's CDs must be used for his or her own education. Any other interpretation would risk compromising the funds for Shaye's college

education if some unforeseen event would occur in the future that might prevent Troha from contributing toward her college expenses. Further, as stated above, the record indicates that the majority of the funds in Shaye's CD accounts were awarded to her as settlement for a dog-bite injury that she received as a child. It would clearly be inequitable to require Shaye to use those funds to pay for Kristofer's college expenses.

Accordingly, the clause should be interpreted as requiring each child's CDs to be used for his or her individual education. Therefore, the condition precedent to use of the proceeds from the sale of the vacation properties and Troha's obligation to pay the balance of the college expenses is satisfied with respect to each child's education when that child has used the CDs in his or her own name as listed in the separation agreement for payment of college expenses. Troha's assignments of error are sustained to the extent that the clause in the separation agreement concerning the use of the children's CDs should be construed as a condition precedent and not stricken completely from the contract.

*Judgment affirmed in part*
*and reversed in part.*

FAIN and FREDERICK N. YOUNG, JJ., concur.