**Paul C. STEWART, Plaintiff–Appellant,**

v.

**CARTER MACHINE CO., INC., et al. Defendant–Appellee.**

No. 02–3720.

United States Court of Appeals, Sixth Circuit.

Nov. 6, 2003.

Gary A. Reeve, Reeve & Watts, Worthington, OH, for Plaintiff–Appellant.

Michael J. Jordan, Randal G. Ammons, Walter & Haverfield, Cleveland, OH, James L. Childress, Calhoun, Benzin, Kademenos & Heichel, Mansfield, OH, for Defendants–Appellees.

Before MARTIN and SUTTON, Circuit Judges; and MILLS, District Judge.*

* The Honorable Richard Mills, District Court Judge for the Central District of Illinois, sitting by designation.

SUTTON, Circuit Judge.

In January 2001, Paul Stewart filed a lawsuit against his former employers raising a series of ERISA and state-law tort claims. The defendants——Carter Machine Co., Inc., Hydranamics, Inc. (a wholly-owned subsidiary of Carter Machine), and Juanita and Andrea Carter (officers of Carter Machine)—filed an answer and several counterclaims alleging defamation, interference with business relations, negligent performance of employment duties, and lost profits.

Under the Local Rules of the United States District Court for the Northern District of Ohio, *see* N.D. Ohio Local Civ. R. 16.5, the district court referred the parties to Early Neutral Evaluation (ENE) and appointed a neutral evaluator, Bart Bixenstine, to preside over the settlement discussions. Mr. Bixenstine in turn held two settlement sessions with the parties and their attorneys. After the second of these sessions, which was held on November 27, 2001, the parties reached an oral settlement agreement, and Mr. Bixenstine provided the district court with a report indicating that the parties had agreed to settle the case. All parties were given a copy of the report, and neither side objected to the report in general or to its conclusion that a settlement had been reached in particular.

After the defendants (and their attorney) reduced the settlement agreement to writing, they shared a proposed draft of the agreement with Stewart and his counsel. Believing that the terms were unfair and inconsistent with their oral agreement, Stewart refused to sign the written settlement agreement. After the parties reported this development to the district court, the court conducted a settlement conference with them on January 22, 2001—all to no avail. After the conference, Stewart remained unwilling to sign a written settlement agreement.

In response, the court set a new trial date and permitted the defendants to file a motion to enforce the oral settlement agreement. Stewart argued that the motion to enforce the oral agreement should be rejected for several reasons. First, he claimed that the parties never achieved a "meeting of the minds" about the settlement because the defendants' draft agreement contained terms inconsistent with the oral agreement. Second, in view of this alleged failure to reach an oral agreement, Stewart claimed that the draft written agreement amounted to a counteroffer, which Stewart had every right to reject and which Stewart in point of fact did reject. Third, and in the alternative, Stewart argued that an agreement never materialized in the first instance because the defendants failed to satisfy a condition precedent—the production by defendants of documents concerning possible overcharges by the plan administrator of the employee stock plan—for reaching an agreement. While acknowledging that the defendants had produced some documents to him. Stewart claimed that they had not produced all of them and that the failure to satisfy this condition precluded the formation of a binding agreement.

Neither party requested an evidentiary hearing regarding the issues raised by the motion or by Stewart's response. After reviewing the parties' pleadings and the undisputed facts, the district court determined that a binding oral agreement had been reached on November 27th and granted the defendants' motion to enforce the settlement agreement. In doing so, the court determined that the parties had reached an oral agreement to settle the case on the following terms: (1) the defendants would pay Stewart $35,000; (2) the parties would dismiss and waive, with prej-

udice, all claims against each other; (3) the $35,000 was for Stewart's employment claims and not his ERISA claims; (4) the parties would not disparage one another; (5) the parties would keep the settlement terms confidential; and (6) the defendants' counsel would produce a written agreement reflecting these terms.

Contrary to Stewart's contention, the court held that the parties had achieved a "meeting of the minds" at their final ENE session on November 27, 2001. In the court's view, even if the defendants' proposed written agreement contained terms inconsistent with the November 27th oral agreement, that fact did not vitiate the enforceability of the oral agreement. At most, the proposed written agreement amounted to an attempt by the defendants to alter the terms of the pre-existing agreement, which Stewart had every right to reject and which he did reject. For like reasons, the court rejected Stewart's argument that the draft agreement constituted a counteroffer. While a counteroffer generally voids an outstanding offer, there were no outstanding offers at the time defendants shared the draft written agreement with Stewart because the parties had already reached an oral agreement along the lines reported by the mediator to the court.

The court, lastly, rejected Stewart's argument that a condition precedent—the production of documents—remained unfulfilled and precluded the consummation of an agreement. As an initial matter, the court observed that the defendants had in fact satisfied Stewart's document request. It then noted that the production of employee stock plan documents was immaterial to the party's dispute because Stewart's complaint alleged only that the defendants manipulated the price of Carter Machine's stock, not that a third-party administrator made overcharges to the employee stock plan.

After carefully examining the parties' briefs, reviewing the record, and hearing oral argument, we conclude that the judgment should be affirmed for the reasons given by the district court in its memorandum opinion–and for one or two other reasons. As the district court properly recognized, an oral agreement to settle a case may be enforced where all that remains to be done is to reduce the agreement to written terms. *See Re/Max Int'l, Inc. v. Realty One, Inc.,* 271 F.3d 633, 646 (6th Cir.2001) ("When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement."). Doubtless, Stewart is correct that no such agreement may be formed in the first instance where an unfulfilled condition precedent remains. *See Mumaw v. W. & S. Life Ins. Co.,* 97 Ohio St. 1, 119 N.E. 132, 135 (1917) ("[A] condition precedent is one that is to be performed before the agreement becomes effective."); *Troha v. Troha,* 105 Ohio App.3d 327, 663 N.E.2d 1319, 1323 (1995) ("A condition precedent is a condition which must be performed before the obligations in the contract become effective."); *see also Graley v. Yellow Freight Sys., Inc.,* No. 98–4166, 2000 WL 799779, at *7 (6th Cir. June 14, 2000) (noting that an agreement is unenforceable if it is "subject to some condition or reservation which was never met").

In this instance, however, we agree with the defendants that the alleged document request was not a condition precedent at all. First, when Mr. Bixenstine reported to the court that an agreement had been reached and did so in a communication that was shared with the parties, Stewart did not complain that an unfulfilled condition precedent precluded the

formation of an agreement. Second, in an e-mail from Stewart's counsel to defendants' counsel in response to the proposed written agreement, Stewart's counsel registered several objections to the draft, not one of which included the objection that a condition precedent to the formation of an agreement remained unfulfilled. *See* Reeve Aff. Ex. A. Third, in an affidavit filed in response to the motion to enforce the settlement agreement, Stewart's counsel explained his client's objections to the agreement as follows:

> On December 12, 2001, my client informed me that he was refusing to sign the draft Settlement Agreement because he felt a betrayal of the settlement process in that:
>
> a. The confidentiality provision regarding being able to reveal the non-ERISA nature of the funds paid was tailored to benefit Defendants alone; and,
>
> b. The statement regarding "... no evidence of ERISA violations ..." being found was not true.

Reeve Aff. ¶ 9. Not one of these objections, however, goes to the absence of any underlying agreement or to the failure to satisfy a condition precedent.

Elsewhere in the same affidavit, it is true, Stewart's counsel says that "[m]y client had also requested as a condition of finalizing the agreement" the exchange of financial statements of the employee stock plan. Yet this statement, written by Stewart's counsel, does not speak to a condition precedent of forming an agreement, but to the "condition of finalizing" one. In view of the fact that Stewart's underlying complaint did not address this particular issue and in view of the failure of Stewart or his counsel at any other time to protest the formation of an agreement on November 27th, the request is properly read in the same light as the ministerial requirement of reducing the agreement to written terms, not as an unmet condition precluding the formation of an agreement. *See* Re/Max Int'l, Inc., 271 F.3d at 646 (noting that when parties reach an agreement on all material terms, non-material tasks will not "undermine the crux of the agreement."). Under these circumstances and in the absence of a request by plaintiffs for an evidentiary hearing about the contract, we agree with the district court that the evidence presented reveals a case of settlor's remorse, not the failure to reach an enforceable oral agreement to settle a case in the first instance.

For these reasons and those expressed in the district court's memorandum opinion, we AFFIRM the judgment of the district court.