[Cite as *Trico Land Co., L.L.C. v. Kenoil Producing, L.L.C.*, 2014-Ohio-1700.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TRICO LAND COMPANY, LLC | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13CA008 |
| | : | |
| KENOIL PRODUCING LLC | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Holmes County Court
                                 of Common Pleas, Case No. 12CV007



JUDGMENT:                        AFFIRMED



DATE OF JUDGMENT ENTRY:          April 17, 2014



APPEARANCES:

For Plaintiff-Appellant:                    For Defendant-Appellee:

AUDREY E. VARWIG                            JAMES M. RICHARD
DICKIE, McCAMEY, &  CHILCOTE, PC            RICHARD LAW OFFICE, LLC
2109 Stella Court                           127 East Liberty St., Ste 100
Columbus, OH 43215                          P.O. Box 1207
                                            Wooster, OH 44691

*Delaney, J.*

{¶1}   Appellant Trico Land Co., LLC ("Trico") appeals from the September 24, 2012, January 24, 2013, and July 3, 2013 judgment entries of the Holmes County Court of Common Pleas.   Appellee is Kenoil Producing, LLC ("Kenoil").

## FACTS AND PROCEDURAL HISTORY

{¶2}   On October 1, 2008, Kenlo Properties, LLC ("Kenlo") entered into an Oil and Gas Lease agreement (the "Lease") with Kenoil whereby Kenoil was granted rights to conduct "testing, drilling, operating for oil and gas," and related activities on a parcel of 125.85 acres of real property (the "Property") located in Holmes County, Ohio.  The Lease was recorded on October 24, 2008.

{¶3}   The following terms of the Lease are relevant to this appeal.

{¶4}   The habendum clause states:

> It is agreed that this lease shall remain in force for a primary term of ten years from this date and if lessee shall commence to drill within said primary term or any extension thereof, the said lessee shall have the right to continue drilling to completion with reasonable diligence and said term shall extend as long thereafter as oil and gas, or either of them, is produced by lessee from said land or a well is located on said land tract, or from a communitized unit as hereinafter provided.

{¶5}   Regarding commencement of a well and delay rental payments:

If no well be commenced on said land on or before the 1st day of October, 2009, this lease shall terminate as to both parties, unless the lessee shall on or before that date pay or tender to the lessor or the lessor's credit at the address above, which shall continue as the depository regardless of changes in ownership of said land, the sum of one hundred tewnty (*sic*) seven dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. The payment herein referred to may be made in currency, draft, or check at the option of the lessee and the depositing of such currency, draft, or check in any post office, with sufficient postage and properly addressed to the lessor on or before said last mentioned date, shall be deemed payment as herein provided. In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid and any and all other rights conferred.

{¶6} The change in ownership clause states:

If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants

hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof; and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such defaults shall not operate to defeat or affect this lease insofar as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rentals.

{¶7} The right of forfeiture or rescission is conditioned upon the lessor giving lessee thirty days' written notice stating the reason for the forfeiture:

In the event Lessor considers that Lessee has not complied with all its obligations hereunder, Lessor shall notify Lessee in writing by certified mail stating specifically in what respects Lessee has breached this contract. Lessee shall then have thirty (30) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease of thirty (30) days after service of such notice on Lessee. Neither the service of said notice nor the doing of any

acts by Lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that Lessee has failed to perform all its obligations hereunder.

{¶8} Finally, the Lease by its language negates the imposition of implied covenants:

This lease contains all the agreements and understandings of the lessor and the lessee respecting the leased premises and no implied covenants or obligations shall be read into this lease or imposed on the parties or either of them, and no verbal representations or promises have been made or relied upon by lessor or lessee supplementing or modifying this lease or as an inducement thereto.

{¶9} Kenoil did not commence a well prior to October 1, 2009; nor did Kenoil pay a delay rental of $127.00 prior to October 1, 2009. Kenoil made no payments in 2009 or 2010.

{¶10} Kenlo did not notify Kenoil of any breach of its obligations under the Lease terms.

{¶11} On December 19, 2008, a limited warranty deed was recorded, transferring the Property from Kenlo to Trico.

{¶12} Trico did not notify Kenoil of its acquisition of the fee simple interest in the Property.

{¶13} On September 22, 2011, Kenoil tendered a check in the amount of $1,270.00 to Trico. The check indicated this amount represented 10 years of lease

rentals at the rate of $127.00 per year. In a letter to Trico dated October 19, 2011, Kenoil stated it had tendered the rental payment and believed it was therefore in compliance with the terms of the Lease.

{¶14} On January 24, 2012, Trico filed a civil complaint against Kenoil; Count I is a complaint to quiet title and Count II is a claim for slander of title.

{¶15} On February 16, 2012, Trico recorded an Affidavit of Abandonment stating Kenoil's "oil and gas interest is considered abandoned and is now vested in the present surface owner of the real estate [i.e., Appellant Trico]."

{¶16} On March 30, 2012, Kenoil recorded an Affidavit of Preservation of Mineral Rights.

{¶17} On August 27, 2012, Trico filed a motion for summary judgment and Kenoil filed a motion in opposition. On September 24, 2012, the trial court overruled Trico's motion for summary judgment, finding Trico failed to provide Kenoil with notice of its purchase of the Property, and Trico did not provide Kenoil with notice of material default and an opportunity to cure the default.

{¶18} On October 19, 2012, Kenoil filed a motion for summary judgment on Count II of Trico's complaint (slander of title) and Trico filed a memorandum in opposition. On January 24, 2013, the trial court granted Kenoil's motion for summary judgment.

{¶19} Trico appealed the trial court's ruling to this Court in *Trico Land Co., L.L.C. v. Kenoil Producing, L.L.C.*, 5th Dist. Holmes No. 13CA001, 2013-Ohio-2065. We dismissed the appeal, finding the order was not final and appealable because the trial court did not rule on Count I of Trico's complaint. Id., 2013-Ohio-2065 at ¶ 29.

{¶20} Back in the trial court, Kenoil filed a motion for summary judgment on Count I of Trico's complaint (quiet title) and Trico filed a memorandum in opposition. On July 3, 2013, the trial court granted Kenoil's motion for summary judgment on Count I of the complaint.

{¶21} Trico now appeals from the trial court's decisions of September 24, 2012; January 24, 2013; and July 3, 2013.

{¶22} Trico raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I. THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT. DECISION AND JUDGMENT ENTRY – PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, SEPTEMBER 24, 2012, APPENDIX A."

{¶24} "II. THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF PLAINTIFF'S COMPLAINT, THE ACTION FOR SLANDER OF TITLE. DECISION ON MOTION FOR SUMMARY JUDGMENT, JAN. 24, 2013, APPENDIX B."

{¶25} "III. THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF PLAINTIFF'S COMPLAINT, THE ACTION TO QUIET TITLE. DECISION AND JUDGMENT ENTRY – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT, APPENDIX D."

{¶26} "IV. THE TRIAL COURT ERRED WHEN IT FOUND THE EXISTENCE OF A SECOND LEASE ON THE PROPERTY THAT WAS NOT IN EVIDENCE. DECISION

AND JUDGMENT ENTRY – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ON COUNT I OF THE COMPLAINT, APPENDIX D."

**ANALYSIS**

*Failure to Comply with App.R. 16(A)(7)*

{¶27} We first note Trico has not complied with App.R. 16(A)(7), which states:

> The appellant shall include in its brief, under the headings and in
> the order indicated, all of the following:
>
> * * * *.
>
> An argument containing the contentions of the appellant with
> respect to each assignment of error presented for review and the
> reasons in support of the contentions, with citations to the
> authorities, statutes, and parts of the record on which appellant
> relies. The argument may be preceded by a summary.

{¶28} Trico's assignments of error (Brief for Appellant, 1) are not cited in the argument, nor supported individually with argument. Instead we are left to parse Trico's brief for its argument pertaining to each assignment of error. The headings throughout Trico's argument are not assigned errors.

{¶29} Trico's stated assignments of error relate to the motions for summary judgment and Kenoil has not been prejudiced by the organization of the brief without the stated assignments of error. While a party's failure to comply with the Appellate Rules is sometimes fatal, we prefer, in light of the extended procedural history of this case, to decide this matter on the merits. See, *Mtge. Electronic Registrations Sys. v. Mullins,* 61

Ohio App.3d 12, 2005-Ohio-2303, 829 N.E.2d 326 (4th Dist.); but c.f. *Henry v. Gastaldo*, 5th Dist. Tuscarawas No. 2005 AP 03 0022, 2005-Ohio-4109.

{¶30} We turn, then, to the merits of Trico's arguments.

## I., II., III.

{¶31} These assignments of error are related and will be considered together. In its first, second, and third assignments of error, Trico argues the trial court erred in overruling its motion for summary judgment and in granting summary judgment for Kenoil. We disagree.

{¶32} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56, which was reaffirmed by the Ohio Supreme Court in *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994), citing *Temple v. Wean United, Inc.* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶33} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgment motions on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 56 N.E.2d 212 (1987).

{¶34} With this standard in mind we turn to the central issue raised by the parties' motions for summary judgment: the validity of the Lease. Trico argues the Lease terminated by its own terms due to Kenoil's failure to commence a well or to make rental payments. Kenoil responds the Lease contains a condition precedent which Trico failed to satisfy, to wit, providing written notice of the change in ownership of the Property. We agree with Kenoil and therefore find the trial court did not err in overruling Trico's motion for summary judgment and granting Kenoil's motions for summary judgment.

{¶35} With respect to oil and gas leases, the Supreme Court of Ohio stated:

> The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties.
>
> *Moore v. Adams*, 5th Dist. No. 2007AP090066, 2008-Ohio-5953, 2008 WL 4907590, ¶ 21, citing *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897).

{¶36} When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. *Westfield Ins. Group v. Affinia Dev., L.L.C.,* 2012-Ohio-5348, 982 N.E.2d 132, ¶ 21 (5th Dist.). We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Sunoco, Inc. (R & M) v. Toledo Edison, Co.,* 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37, citing *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶37} The change in ownership clause in the Lease is a condition precedent to the lessee's obligation to pay rentals. "A condition precedent is a condition which must be performed before the obligations in the contract become effective." *Troha v. Troha*, 105 Ohio App.3d 327, 334, 663 N.E.2d 1319 (2nd Dist.1995), citing *Mumaw v. W & S. Life Ins. Co.*, 97 Ohio St. 1, 119 N.E. 132 (1917). "Essentially, a condition precedent requires that an act must take place before a duty of performance of a promise arises. If the condition is not fulfilled, the parties are excused from performing.'" Id., citing *Fortune v. Fortune*, 2nd Dist. Greene No. 90-CA-96, 1991 WL 70721, *4 (May 3, 1991).

{¶38} In the instant case, the language of the change in ownership clause reflects the parties' intention that lessee's obligation to make delay rental payments to an assignee lessor was contingent upon "written transfer or assignment or a true copy

thereof," which was a condition precedent to the contract. *Troha,* supra, 105 Ohio App.3d at 334.  It is undisputed that Trico provided no such notice.

{¶39} The lessor's failure to comply with a change in ownership clause of a lease relieves the lessee of its obligation to pay delay rentals, and the lease will not be invalidated as a result.  *Conny Farms, Ltd. v. Ball Resources, Inc.*, 7th Dist. No. 12 CO 18, 2013-Ohio-2874, ¶ 29-30.  Further, a lessee is not required to constantly search title records to discover the identity of a lessor so that payments may be properly made; "[t]o so hold would obviate the purpose of the change in ownership clause."  Id.

{¶40} In *Kern v. Clear Creek Oil Co.*, we examined a clause similar to the one here and considered whether a lessor's failure to notify the lessee of a change in ownership relieved the lessee of the obligation to pay delay rentals and thereby prevented forfeiture of the lease.  149 Ohio App.3d 560, 2002-Ohio-5438, 778 N.E.2d 115 (5th Dist.).  The *Kern* clause at issue provided "no changes in ownership of the land or assignment of royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof."  Id., 2002-Ohio-5438 at ¶ 22.  We held as follows:

> In construing the language of the lease so as to give effect to the intention of the parties, we conclude that the trial court erred when it terminated the lease and right-of-way and awarded $2,000 to [Lessor]. In doing so, we find that the trial court failed to consider the language of the lease requiring notice to be given to [Lessee] regarding the change in ownership before such change would be binding on [Lessee]. The record indicates that [Lessor] never

provided [Lessee] with such written notice. The fact that [Lessee] may have had verbal notice of the change in ownership does not suffice to comply with the specific terms of the lease. This written notice was required to make the change in ownership of the land binding on [Lessee]. Thus, having failed to provide such written notice, we conclude that [Lessor was] not entitled to termination of the lease and right-of-way or yearly delay rentals. Accordingly, the trial court erred when it granted summary judgment on behalf of [Lessor], as we conclude that [Lessor] failed to give written notice to [Lessee] according to the clear and unambiguous terms of the lease.

*Kern v. Clear Creek Oil Co.,* 149 Ohio App.3d 560, 2002-Ohio-5438, 778 N.E.2d 115 (5th Dist.), ¶ 27.

{¶41} In the instant case, Kenoil discovered the change in ownership through its own investigation.  Nevertheless, Trico did not fulfill the condition precedent in the Lease, thereby Trico was not entitled to forfeiture of the Lease and Kenoil was not obligated to pay the yearly delay rental payments.

{¶42} As the Seventh District pointed out in *Conny Farms, Ltd.*, supra, Trico asks us to invalidate the Lease for Kenoil's failure to comply with its terms when, through its own investigation, Kenoil sought to remedy the situation, yet Trico completely failed to comply with the Lease at all.  See, *Conny Farms, Ltd.,* supra, 2013-Ohio-2874 at ¶ 23.

{¶43} We decline, therefore, to invalidate the Lease. Reasonable minds can then come to only one conclusion: Trico cannot maintain its actions to quiet title and for slander of title. The trial court thus did not err in overruling Trico's motion for summary judgment. Similarly, the trial court properly granted Kenoil's motions for summary judgment.

{¶44} Trico's first, second, and third assignments of error are overruled.

IV.

{¶45} In its fourth assignment of error, Trico argues the trial court improperly considered a previous lease granted to Kenoil which was not properly in evidence. While we agree the "second lease" was not properly in evidence, this assignment of error is moot in light of our determination of Trico's first, second, and third assignments of error, to wit, that the trial court properly overruled Trico's motion for summary judgment and sustained Kenoil's motions for summary judgment on other grounds.

{¶46} The Ohio Supreme Court has consistently held a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof. *Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990) citing *Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284, 58 N.E.2d 658 (1944).

{¶47} Trico's fourth assignment of error is overruled.

## CONCLUSION

{¶48} The four assignments of error of Plaintiff-Appellant Trico Land Co., LLC are overruled and the judgments of the Holmes County Court of Common Pleas are affirmed.

By: Delaney, J. and

Hoffman, P.J.

Farmer, J., concur.